1

2
Frank S. Hedin (SBN 291289)
**HEDIN LLP**
3
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
4
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
5
E-Mail: fhedin@hedinllp.com

6
Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
7
140 Broadway, 46th Floor
New York, New York 10005
8
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
9

10
*Counsel for Plaintiff and Putative Class*

11

12
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

13

14
JEREMY KHINOO, individually and on
behalf of all others similarly situated,
15
                    Plaintiff,
16
            v.
17
  REALPLAY TECH INC.
18
                    Defendant.
19

Case No. _____

**CLASS ACTION COMPLAINT**

(DEMAND FOR JURY TRIAL)

20

21

22

23

24

25

26

27

28

1       This is a putative class action lawsuit against Defendant RealPlay Tech Inc. for engaging in

2  an illegal gambling scheme. Plaintiff Jeremy Khinoo, individually and on behalf of all others

3  similarly situated, makes the following allegations pursuant to the investigation of his counsel and

4  based upon information and belief, except as to allegations specifically pertaining to himself and

5  his counsel, which are based on personal knowledge.

6  **<u>INTRODUCTION</u>**

7      1.    Defendant RealPlay Tech Inc. owns, operates, and receives significant revenue from

8  its online "social" casino available through their website www.realprize.com and mobile apps, where

9  it offers casino-style slots games that operate based on a digital currency called "coins" which can

10  be purchased and wagered for extended gameplay along with other upgrades and rewards (the

11  "RealPrize Gambling Platform").

12      2.    While Defendant advertises and promotes the RealPrize Gambling Platform to people

13  in California as a legitimate online business, giving it an aura of legitimacy and legality to Plaintiff

14  and Class members, the RealPrize Gambling Platform is actually a dangerous and plainly unlawful

15  gambling enterprise.

16      3.    The scheme goes like this: Defendant sells digital coins to consumers on the

17  RealPrize Gambling Platform – including consumers in California – and then immediately accepts

18  those coins back (from the consumers who purchased them) as wagers on the outcomes of the various

19  casino-style games of chance offered on the RealPrize Gambling Platform.  Consumers who

20  purchase and then wager virtual coins on the RealPrize Gambling Platform do so in the hopes of

21  winning more of these coins, which can be used to place more wagers and, in some instances, unlock

22  new gambling games or extend their gameplay once they have run out of coins to wager with.

23  Plaintiff and numerous other California residents have lost significant sums of their hard-earned

24  money buying and placing wagers with coins on the RealPrize Gambling Platform, and Defendant

25  has, in turn, reaped enormous profits from the losses these people have sustained.

26      4.    California's gambling law clearly prohibits the type of gambling offered by

27  Defendant. Accordingly, Plaintiff brings this Class Action Complaint, individually and on behalf of

28

all others similarly situated, to redress Defendant's widespread violations of California's gambling laws.

**PARTIES**

5.     Plaintiff Jeremy Khinoo is a natural person and a citizen and resident of Santa Barbara, California.

6.     Defendant RealPlay Tech Inc. is a private company organized and existing under the laws of Delaware, with a place of business in Delaware. Defendant RealPlay Tech Inc. has operated and continues to operate the RealPrize Gambling Platform and has received and continues to receive substantial revenue—estimated in the hundreds of millions of dollars annually   —from the losses sustained by players, including California residents, who have paid tournament entry fees and wagered on the RealPrize Gambling Platform.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8.     The Court has personal jurisdiction over   Defendant and venue is proper in this judicial District because Defendant purposefully directed the   RealPrize Gambling Platform to residents of  California (including by advertising and running promotional materials directed to persons in California), knowingly accepted registrations, purchases of coins, and wagers placed on the RealPrize Gambling Platform from Plaintiff and numerous other persons in   California, and collected enormous revenues from the losses suffered by Plaintiff and numerous other persons in California who purchased and placed wagers on the   RealPrize Gambling Platform, such that a substantial portion of the events that gave rise to Plaintiff's claims occurred in California and within this judicial District.

**FACTUAL ALLEGATIONS**

**I.     California's Gambling Laws**

9.      California Penal Code § 330b(a) states that it is "unlawful for any person to make or to permit the making of an agreement with another person regarding any slot machine or device, by which the user of the slot machine or device, as a result of the element of hazard or chance or other unpredictable outcome, may become entitled to receive money, credit, allowance, or other thing of value or additional chance or right to use the slot machine or device, or to receive any check, slug, token, or memorandum entitling the holder to receive money, credit, allowance, or other thing of value."

10.     California Penal Code § 330b(d) provides:   "For purposes of this section, 'slot machine or device' means a machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device[.]"

11.     California broadly defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Cal. Penal Code § 330.2.

12.     California Penal Code § 319 prohibits any "scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." A lottery consists of three elements: (1) prize, (2) chance, and (3) consideration.

13.     California's Gambling Control Act (Cal. Bus. & Prof. Code §§ 19800 *et seq*.) establishes comprehensive licensing and regulatory requirements for gambling operations. Sections 19801 and 19850 provide that unless licensed, state law prohibits commercially operated gambling facilities; that all gambling operations and persons having significant involvement therein shall be licensed, registered, and regulated; and that all persons who deal, operate, carry on, conduct, maintain, or expose for play any gambling game shall apply for and obtain a valid state gambling license.

14.    The Gambling Control Act defines "gambling" as any act of dealing, operating, carrying on, conducting, maintaining, or exposing for play any controlled game. Cal. Bus. & Prof. Code § 19805(l).

15.    A "controlled game" is defined to include "any poker or Pai Gow game, and any other game played with cards or tiles, or both, and approved by the Department of Justice, and any game of chance, including any gambling device, played for currency, check, credit, or any other thing of value that is not prohibited and made unlawful by statute or local ordinance." Cal. Penal Code § 337j(e)(1).

16.    California regulations adopted pursuant to the Gambling Control Act define " Gaming Activity" as "any activity or event including, but not limited to, jackpots, bonuses, promotions, cashpots, tournaments, etc., that is appended to, or relies upon any controlled game." Cal. Code Regs., tit. 11, § 2010(f).

17.    In 2008, California's legislature re-affirmed that "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

18.    As alleged below, during the relevant statutory period, Defendant violated California's ban on gambling operating and amassing enormous revenue from the losses sustained by California residents on the illicit gambling tournaments hosted by the RealPrize Gambling Platform.

## II.    The Evils of Online Gambling

19.    Gambling is one of the oldest and heavily regulated human behaviors. Even before the advent of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through biblical injunctions. As religious authority gave way to democratic governments, the vast majority of states  in the country enacted legislation prohibiting or strictly regulating gambling activities. Unlik e historical relics, these states have recognized that gambling poses a public health risk. Scientific research has confirmed and shed further light on the perils of gambling—ranging from mental health issues to physical , financial, and interpersonal problems.

20.     With technological advances, however, many casinos and other gambling operators proliferated into people's pockets through online websites and apps, including the RealPrize Gambling Platform. These online gambling platforms have been particularly challenging to regulate because many states' anti-gambling statutes were originally enacted to prohibit in-person gambling activities.

21.     Worse still, because these online gambling platforms operate outside of the confines of gambling laws, they knowingly rig the odds against users to further exploit them. For example, while slot machines in a physical casino are required to randomize their results, online gambling platforms tailor "wins" and "losses" to manipulate consumer engagement through powerful algorithms. As Playtika's CEO explained:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[1]

22.     Defendant has employed these exact tactics to maximize the profits it reaps through the RealPrize Gambling Platform.

### III.    The RealPrize Gambling Platform

23.     Defendant owns and operates the RealPrize Gambling Platform, which is on various mobile apps. The RealPrize Gambling Platform allows consumers, including those in California, to spend real money to purchase coins and to gamble with those coins on a wide variety of chance-based games, including slots.

---

[1] Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now, VENTUREBEAT* (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-mattersnow/.

24.     The process of getting set up with an account to play the gambling games offered on the RealPrize Gambling Platform simply requires a consumer to input basic personal information, including, *inter alia*, his or her e-mail address and phone number.

25.     After creating an account, the consumer can begin placing wagers on the gambling games offered on the RealPrize Gambling Platform with a small periodic allotment of free coins provided upon enrollment.

26.     After invariably losing the free allotments of coins, the consumer must purchase more coins if he or she wishes to continue wagering with them on the particular casino game of their liking within the RealPrize Gambling Platform.

27.     Thus, after the consumer loses the free allotments of coins, Defendant will aggressively attempt, through persistent pop-up screens and pages, to sell the consumer additional coins – at varying prices depending on the number of coins the consumer wishes to purchase.

28.     Purchases of additional coins on the RealPrize Gambling Platform can be made using a wide variety of payment methods, including credit and debit cards. Regardless of the payment method, the purchased coins are instantly available for gambling on the RealPrize Gambling Platform.

29.     The coins won by consumers playing Defendant's games of chance are identical to the coins that Defendant sells.

30.     Freshly topped off with an additional allotment of purchased coins, the consumer will wager those coins in the hopes of winning more coins that he or she would otherwise have had to purchase.

31.     Notably, the outcome of every wager placed on each of the games offered on the RealPrize Gambling Platform is based on an element of chance.

32.     Defendant maintains win and loss records and account balances for each person who creates an account, purchases coins, and uses those coins to place wagers on the RealPrize Gambling Platform. Indeed, once Defendant's algorithms determine the outcome of a wager and Defendant displays the outcome, Defendant adjusts the balance of coins in the person's account. Defendant

keeps detailed records of each wager and its outcome for every player of every game offered on the RealPrize Gambling Platform.

33.     Using the information provided by users at the time they register for accounts and make purchase of coins, as well as by analyzing users' IP addresses, Defendant have intimate knowledge of, and maintains records reflecting, the geographic locations (including city and state for U.S.-based players) from which each of its users enrolled in, made purchase of coins, and lost coins wagering on the RealPrize Gambling Platform.

34.     Thus, at the time Plaintiff and the other members of the Class enrolled in, purchased coins on, and lost coins placing wagers on the RealPrize Gambling Platform, Defendant had actual knowledge that these persons were located in California based on the information they had provided while registering for accounts and making purchases and the IP addresses associated with the devices from which they accessed the RealPrize Gambling Platform. Defendant nonetheless happily pocketed the losses they sustained using purchased coins to place wagers on the RealPrize Gambling Platform.

35.     During the four-year period preceding the filing of this action, Defendant has received significant revenue from California residents through their operation of "fringe gambling devices," "video gaming devices," and "gambling devices or records" on the illicit RealPrize Gambling Platform – in direct violation of California's Gambling Act.

**IV.    Plaintiff Jeremy Khinoo's Experience**

36.     Plaintiff Jeremy Khinoo created an account on the RealPrize Gambling Platform and, after losing his periodic allotments of free coins by placing wagers on the RealPrize Gambling Platform, he purchased additional coins from Defendant.

37.     Thereafter, Plaintiff continued to play the gambling games offered on the RealPrize Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

38.     During the four-year period preceding the filing of this action, Plaintiff spent a significant amount of money purchasing coins from Defendant and thereafter lost all or substantially

all of those purchased coins playing the gambling games offered on the RealPrize Gambling Platform.

39.    At all times relevant hereto, Plaintiff resided in, was a citizen of, and was physically present in California.

**V.    Plaintiff's Claims Are Not Subject to Arbitration.**

40.    Plaintiff's sole reason for setting up an account with Defendant was to gain access to the RealPrize Gambling Platform services in California offered by Defendant that he now understands violate California law. He did not review and was not aware he was purportedly agreeing to any terms and conditions on Defendant's RealPrize Gambling Platform at the time of account creation or otherwise.

41.    Said differently, to the extent a contract was formed between Plaintiff and Defendant, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

42.    Accordingly, Plaintiff's contract with Defendant (to the extent any such contract was otherwise ever formed) is void (and was void *ab initio*) pursuant to, among other authorities California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."

**CLASS ACTION ALLEGATIONS**

43.    Plaintiff seeks to represent a class defined as:

All residents of California who purchased, wagered, and lost coins on Defendant's RealPrize Gambling Platform at any time during the four-year period preceding the filing of this action (continuing through the date of any order granting class certification).

44.    Members of the Class are so numerous that their individual joinder herein is impracticable.  The members of the Class number in at least the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time, but will be determined in discovery.  The Class may be notified of the pendency of this action at the addresses found in Defendant's records.

45.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant maintained, owned, operated, or managed gambling websites prohibited by California Penal Code §§ 330a, 330b, and 330.1 *et seq.*; (b) whether Defendant violated 18 U.S.C. § 1955 by operating the gambling businesses described herein; (c) whether Defendant's conduct alleged herein violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (d) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (e) whether Plaintiff and the Class members are entitled to damages and/or restitution; (f) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (g) whether Plaintiff and the Class members are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

46.     The claim of the named Plaintiff is typical of the claims of the members of the Class in that the named Plaintiff and all Class members suffered monetary loss as a result of Defendant's RealPrize Gambling Platform.

47.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

48.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

1    supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability

2    issues will ensure that all claims and claimants are before this Court for consistent adjudication.

3                                    **CAUSES OF ACTION**

4
                                            **COUNT I**
5                  **Violation of California's Unfair Competition Law ("UCL")**
                         **Cal. Bus. & Prof. Code §§ 17200, *et seq.***
6                           **(On Behalf of Plaintiff and the Class)**

7            49.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set

8    forth herein.

9            50.    Plaintiff brings this claim individually and on behalf of the members of the Class

10   against Defendant.

11           51.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

12   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

13   act[.]"  Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact

14   and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. &

15   Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and

16   others similarly situated who are affected by the unlawful and/or unfair business practice or act.

17           52.    As alleged below, during the relevant statutory period, Defendant's illicit gambling

18   tournaments hosted by the  RealPrizeGambling Platform violate the UCL's proscription against

19   engaging in **Unlawful Business Practices** through its violations of the CLRA, Cal. Civ. Code §

20   1770, *et seq.*; and the following gambling laws:

21           (a)  **California's Gambling Control Act (Cal. Bus. & Prof. Code §§ 19800, *et seq.*)**:

22                Sections 19801 and 19850 of the Gambling Control Act provide that unless licensed,

23                state law prohibits commercially operated gambling facilities; that no new gambling

24                establishment may be opened except upon affirmative vote of the electors; that all

25                gambling operations and persons having significant involvement therein shall be

26                licensed, registered, and regulated; and that all persons who deal, operate, carry on,

27                conduct, maintain or expose for play any gambling game shall apply for and obtain a

28

valid state gambling license. The RealPrize Gambling Platform constitutes "gambling" because it is a "game played with cards or tiles, or both, and …[a] game of chance, including any gambling device, played for currency, check, credit, or any other thing of value that is not prohibited and made unlawful by statute or local ordinance." Cal. Penal Code § 337j(1) (emphasis added). Defendant has not applied for or obtained any state gambling license, and therefore violates California's Gambling Control Act.

(b) **California Penal Code § 330a:** Section 330a states that "[e]very person, who has in his or her possession or under his or her control . . . or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by mean whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance . . . is guilty of a misdemeanor."  Defendant violates this law because it operates the illegal RealPrize Gambling Platform, upon which persons are able to, and do, gamble in virtual games of chance.

(c) **California Penal Code § 330b:** Section 330b states that "[i]t is unlawful for any persons to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed, or controlled by that person, any slot machine or device, as defined in this section." Defendant violates this law because it permits the operation, placement, maintenance, or

1    keeping of a slot machine or device as defined by Penal Code § 330b(d). The software

2    for the RealPrize Gambling Platform is an apparatus alone. Moreover, the game operating

3    together with Defendant's servers is a machine, apparatus, or device. The software for

4    the game also modifies mobile phone devices into gambling devices as defined by Penal

5    Code § 330b(d). Further, a user's mobile device is adapted by the game to create a slot

6    machine or device. Users play the game and pay tournament fees through the hardware

7    features of the mobile devices on which the RealPrize Gambling Platform operates.

8    (d) **California Penal Code § 330.1 *et seq.*:** Section 330.1(a) states that "[e]very person who

9    manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or

10   gives away, transports, or exposes for sale or lease, or offers to sell, rent, lease, let on

11   shares, lend or give away or who permits the operation of or permits to be placed,

12   maintained, used, or kept in any room, space, or building owned, leased, or occupied by

13   him or her or under his or her management or control, any slot machine or device as

14   hereinafter defined, and every person who makes or permits to be made with any person

15   any agreement with reference to any slot machine or devic e as hereinafter defined,

16   pursuant to which agreement the user thereof, as a result of any element of hazard or

17   chance, may become entitled to receive anything of value or additional chance or right

18   to use that slot machine or device, or to receive any check, slug, token, or memorandum,

19   whether of value or otherwise, entitling the holder to receive anything of value, is guilty

20   of a misdemeanor." Defendant violates this law because it operates the illegal RealPrize

21   Gambling Platform, upon which persons are able to, and do, gamble in virtual games of

22   chance.

23   (e) **California Penal Code § 337j(a)(1)**: By "operat[ing], carry[ing] on, conduct[ing],

24   maintain[ing], or expos[ing] for play" unlicensed gambling in the state. Defendant

25   violates this law because it operates the illegal RealPrize Gambling Platform, upon which

26   persons are able to, and do, gamble in virtual games of chance.

27   (f) **California Penal Code § 337j(a)(2):** By "receiv[ing], directly or indirectly, any

28   compensation or reward or any percentage or share of the revenue, for keeping, running,

1    or carrying on any controlled game." Defendant violates this law because it operates the

2    illegal RealPrize Gambling Platform, upon which persons are able to, and do, gamble in

3    virtual games of chance.

4    (g) **Cal. Penal Code § 319.** Section 319 defines a lottery as any "any scheme for the disposal

5    or distribution of property by chance, among persons who have paid or promised to pay

6    any valuable consideration for the chance of obtaining such property." Defendant violates

7    this law because it operates the illegal RealPrize Gambling Platform, upon which persons

8    distribute their property (*i.e.*, "coins") which they purchased through valuable

9    consideration based on chance.

10   (h) **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the "IGBA"):** The

11   IGBA makes it a crime to "conduct, finance, manage, supervise, direct, or own all or

12   part" of an illegal gambling business. Defendant violates the IGBA because its business

13   involves five or more persons, has been in continuous operation for more than thirty days,

14   and violates California's gambling laws as alleged herein. By managing, directing, or

15   controlling all or part of the conduct alleged herein with respect to its sale of virtual

16   currency (in the form of coins), Defendant violates 18 U.S.C. § 1955.

17   (i) **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-**

18   **5367) (the "UIGEA"):** The UIGEA makes it illegal for a "person engaged in the

19   business of betting or wagering" to knowingly accept payments "in connection with the

20   participation of another person in unlawful Internet gambling." 31 U.S.C. § 53 3. 6

21   "Unlawful Internet Gambling" is placing, receiving, or transmitting a bet or wager

22   through, at least in part, the Internet where such bet or wager "is unlawful under any

23   applicable Federal or State law in the State or Tribal lands in which the bet or wager is

24   initiated, received, or otherwise made." 31 U.S.C. § 5362(10)(A). Defendant violates this

25   law because it operates the illegal RealPrize Gambling Platform, upon which persons are

26   able to, and do, gamble in virtual games of chance.

27   53.    Each of these acts and practices constitutes an unlawful act, and thus an independent

28   violation of the UCL.

54.     Defendant has also violated the UCL's proscription against engaging **in Unfair Business Practices.** Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

55.     There is no public utility to Defendant's illegal RealPrize Gambling Platform. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for gaming apps in the marketplace. Defendant's illegal and rigged gambling practices only injure healthy competition and harm consumers.

56.     Plaintiff and the Class could not have reasonably avoided this injury.

57.     Defendant has also violated the UCL's proscription against engaging **in Deceptive Business Practices.** As alleged in detail above, Defendant committed deceptive acts by inducing Plaintiff and the Class members to wager money on the illegal RealPrize Gambling Platform.

58.     Specifically, Defendant committed deceptive acts by including misleading language and omitting material facts about the true nature of the RealPrize Gambling Platform. These representations were false and misleading.

59.     Defendant's representations were misleading to Plaintiff and other reasonable consumers.

60.     As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiff and other members of Class suffered an injury in fact and/or lost money and property as described above.

61.     Through its unlawful, unfair, and deceptive acts and practices, Defendant improperly obtained money from Plaintiff and members of the Class. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin it from continuing to violate the UCL. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

Accordingly, Plaintiff and the Class lack an adequate remedy at law. Moreover, Plaintiff asserts this cause of action in the alternative to its claims for damages below. Finally, legal remedies available to Plaintiff and Class are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. As such, the Court may award restitution even if it determines that Plaintiff and the Class fail to sufficiently adduce evidence to support an award of damages. Further, damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds have grown far greater than the legal rate of interest would recognize. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Equitable relief is appropriate because Plaintiff and the Class may lack an adequate remedy at law if, for instance, damages resulting from their use of the RealPrize Gambling Platform are determined to be an amount less than paid to purchase coins. Without compensation for the full amount paid, Plaintiff and the Class would be left without the remedy they are entitled to in equity.

62.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the conduct described above as Defendant's wrongful conduct is ongoing.

63.    Plaintiff also seeks rescission and an order requiring Defendant to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay their attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

**COUNT II**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On behalf of Plaintiff and the Class)**

64.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

66.     In light of the CLRA's underlying purpose to protect consumers and the liberal construction with which courts should interpret it, Plaintiff's purchase of Defendant's tournament entry fees as described above falls within the definition of a "goods or service" within the meaning of Cal. Civ. Code § 1761 and 1770.

67.     Plaintiff and each member of the Class are consumers as defined by Cal. Civ. Code § 1761(d).

68.     Defendant's sale of "coins" to consumers were "transactions" within the meaning of Cal. Civ. Code. § 1761(e). The purchase of these "coins" is a transaction for accessing and using the RealPrize Gambling Platform.

69.     Defendant violated, and continues to violate, the CLRA by, *inter alia*: (a) manipulating the odds of the games of chance in the RealPrize Gambling Platform to increase their addictive qualities and to induce players to continue playing and spending more money; and (b) deceiving or confusing customers into believing that the gambling transactions made through the RealPrize Gambling Platform confer or involve certain rights, remedies, or obligations (*i.e.*, the right to recover winning and the obligation to pay for losses), when in fact any such rights, remedies or obligations are prohibited by law.

70.     Defendant also violated the following provisions of Cal. Civ. Code § 1770 (a) "Representing that goods or services have . . . characteristics . . . that they do not have"; (b) "Using deceptive representations . . . in connection with . . . services"; and (c)   "Advertising goods or services with intent not to sell them as advertised."

71.     Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future. Plaintiff and the Class relied on Defendant's advertisements, representations and/or omissions to purchase tournament entry fees on the RealPrize Gambling Platform.

72.     As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class members have suffered and will continue to suffer actual damages.

73.     Defendant's wrongful conduct is ongoing and presents a continuing threat to the Class members.

74.     Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel has notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend the Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

## COUNT III
### Violation of Penal Code section 496(c)
### (On behalf of Plaintiff and the Class)

75.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

77.     As alleged above, Defendant's advertisements induced Plaintiff to wager significant amounts of money on the false pretense that it was legal in California. Its purpose in making these false pretenses was to illegally take money from Plaintiff and the Class members.

78.     Pursuant to California Penal Code section 496(a) receiving property "that has been obtained in any manner constituting theft" is a criminal offense punishable by imprisonment.

Pursuant to California law, procuring funds by false pretenses constitutes a violation of Section 496(a). Pursuant to Section 496(c), any person who violates Section 496(a) is liable for three times the actual damages, as well as attorney's fees.

79.    Defendant's conduct alleged above constitutes a violation of Penal Code section 496(a), entitling Plaintiff to the relief provided by Section 496(c), including treble damages and reasonable attorney's fees.

<u>**COUNT IV**</u>
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

80.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

81.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

82.    Plaintiff and the Class members have conferred a benefit upon Defendant in the form of the money they paid to purchase "coins" to wager on Defendant's illegal RealPrize Gambling Platform.

83.    Defendant appreciates and has knowledge of the benefits conferred upon it by Plaintiff and the Class.

84.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained from Plaintiff and the Class members, which Defendant has unjustly obtained as a result of their unlawful operation of casino games. As it stands, Defendant has retained millions of dollars in profits generated from its unlawful games of chance and should not be permitted to retain those ill-gotten profits.

85.    Accordingly, Plaintiff and the Class members seek full disgorgement of all money Defendant has retained as a result of the wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.   For an order certifying the Classes and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.   For an order declaring Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.   For actual, expectation, reliance, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For rescission, restitution and all other forms of equitable relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: January 30, 2026.                          Respectfully submitted,


                                       By:   _/s/ Adrian Gucovschi_

                                       Adrian Gucovschi (State Bar No. 360988)
                                       **GUCOVSCHI LAW FIRM, PLLC.**
                                       140 Broadway, Fl. 46
                                       New York, NY 10005
                                       Telephone: (212) 884-4230
                                       Facsimile: (212) 884-4230
                                       E-Mail: adrian@gucovschilaw.com

                                       **-and-**

                                       **HEDIN LLP**
                                       Frank S. Hedin (SBN 291289)

1

1395 Brickell Ave., Suite 610
2
Miami, Florida 33131-3302
3
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
4
E-Mail: fhedin@hedinllp.com

5

6
*Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

I, Adrian Gucovschi, declare as follows:

3

1.      I am an attorney at law licensed to practice in the State of California and a member

4

5

6

7

8

9

10

11

12

13

States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida,

14

on January 30, 2026.

15

16

*/s/ Adrian Gucovschi*
Adrian Gucovschi

17

18

19

20

21

22

23

24

25

26

27

28